IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

A.B., L.B. and R.B.,                    *

     Plaintiffs,                      *

vs.                                     *           CASE NO. 3:08-CV-86 (CDL)

CLARKE COUNTY SCHOOL DISTRICT,          *

     Defendant.                       *


O R D E R

In this action, Plaintiffs appeal the final decision of Georgia Office of State Administrative Hearings ("OSAH") Administrative Law Judge ("ALJ") Stephanie Howells, *A.B. v. Clarke County School District*, OSAH-DOE-SE-0826892-29-Howells.  Presently pending before the Court are the following motions: Defendant's Motion to Dismiss (Doc. 10) and Plaintiffs' Motion for Admission of Additional Evidence (Doc. 16).  As discussed below, Defendant's Motion to Dismiss is **granted** as to most of Plaintiffs' claims, but the Court finds that the ALJ's Order is unclear and/or silent as to how or whether the ALJ reached a decision on four of Plaintiffs' claims.  Those claims are: (1) Defendant's failure to provide resolution meeting notes to Plaintiffs, (2) Defendant's failure to address Plaintiffs' safety concerns, (3) Defendant's failure to implement Plaintiff A.B.'s individualized education program, and (4) Defendant's unwelcoming treatment of Plaintiffs at school.  Because the ALJ's order does not allow for meaningful review regarding those four claims, the Court **remands** those claims to the ALJ for clarification and to make

specific findings and conclusions. All other claims are properly dismissed.  The Court **denies** Plaintiffs' Motion for Admission of Additional Evidence.  Based on the Court's previous rulings in *A.B. v. Clarke County School District*, No. 3:08-CV-041 (CDL), 2009 WL 902038 (M.D. Ga. Mar. 30, 2009) [hereinafter *A.B. I*], Plaintiffs' Motion to Consolidate is **moot**.  The Court finds that no hearing is necessary and thus **denies** Plaintiffs' Motion for a Hearing.

BACKGROUND

Plaintiff A.B. is a child with significant cognitive, language and physical disabilities.  He is a student with a disability covered by the Individuals with Disabilities Education Act ("IDEA"),[1] 20 U.S.C. § 1400 *et seq.*, and his current placement is the severe intellectual abilities program at Clarke Middle School in the Clarke County School District.  Plaintiffs L.B. and R.B. are A.B.'s parents.

Plaintiffs previously filed a separate Due Process Complaint against Defendant Clarke County School District ("CCSD") pursuant to IDEA, and that Complaint was adjudicated before OSAH ALJ Kristin Miller, *A.B. v. Clarke County School District*, Docket No. OSAH-DOE-SE-0812310-29-Miller.  In that action, Plaintiffs asserted claims under IDEA, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973

---

[1]Congress generally amended IDEA by enacting the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), Pub. L. No. 108-446, 118 Stat. 2647, which took effect on July 1, 2005.  Unless otherwise noted, the statutory citations in this Order refer to IDEA as recodified by IDEIA.

("Section 504").  Specifically, Plaintiffs alleged that while A.B. was an elementary school student in a Clarke County school, another student in A.B.'s special education class, who is referred to as "S-1" in this Order, touched A.B. inappropriately and that CCSD violated IDEA, the ADA and Section 504 because it did not take appropriate action after learning of S-1's behavior.  ALJ Miller granted summary determination in favor of CCSD, finding that some of Plaintiffs' claims were barred by the statute of limitations, that CCSD did not fail to provide A.B. with a free appropriate public education in accordance with IDEA, that CCSD did not violate IDEA's "stay put" requirement with regard to A.B., and that Plaintiffs had not produced sufficient evidence to prove their claims under the ADA or Section 504.  Plaintiffs appealed ALJ Miller's ruling to this Court, and the Court affirmed ALJ Miller's final decision granting summary determination in favor of CCSD on all claims.  *A.B. I*, 2009 WL 902038, at *1.  In this Order, the Court refers to ALJ Miller's final decision and the Court's Order affirming that decision as *A.B. I*.

While *A.B. I* was pending before ALJ Miller, Plaintiffs sought to amend their Complaint to add claims that CCSD harassed and retaliated against A.B., L.B. and R.B. because of their Complaint. ALJ Miller denied the motion to amend, and Plaintiffs filed a second Due Process Complaint that is the subject of the present action.  As discussed in more detail below, ALJ Howells granted summary determination in favor of CCSD.  Plaintiffs now appeal.

STANDARD OF REVIEW

Under IDEA, "[a]ny party aggrieved" by the final decision of an ALJ may bring a civil action in a federal district court.  20 U.S.C. § 1415(i)(2)(A).  The district court "shall receive the records of the administrative proceedings;" "shall hear additional evidence at the request of a party;" and "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  *Id.* § 1415(i)(2)(C).

CCSD moves to dismiss Plaintiffs' Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The usual 12(b)(6) standard of review does not apply in an IDEA appeal, which the Eleventh Circuit has described as a "judgment on the record." *Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1313 (11th Cir. 2003) (internal quotation marks omitted).  Therefore, the administrative record must be the basis for the Court's decision, and the Court must conduct "an entirely *de novo* review of the ALJ's findings."[2]  *CP v. Leon County Sch. Bd. Fla.*, 483 F.3d 1151, 1156 n.4 (11th Cir. 2007).

---

[2]Normally, a district court must give "due weight" to an ALJ's findings of fact, *Walker County School District v. Bennett*, 203 F.3d 1293, 1297-98 (11th Cir. 2000), but ALJ Howells did not make any findings of fact because she decided the matter on CCSD's motion for summary determination.  Based on the written evidence submitted by the parties, ALJ Howells found that no genuine issue of material fact existed on Plaintiffs' claims.  (*E.g.*, Admin. R. 38 at 6-7 ¶ 1, Final Decision Order Granting Def.'s Mot. for Summ. Determination.)

THE ALJ ORDER AND THE ADMINISTRATIVE PROCESS

As ALJ Howells noted in her final decision, Plaintiffs' Due Process Complaint in the present action "includes a significant amount of the same allegations as advanced in" *A.B. I*. (Admin. R.[3] 38 at 3 ¶ 1, Final Decision Order Granting Def.'s Mot. for Summ. Determination [hereinafter ALJ Order].)  Plaintiffs assert that the present action "does not raise 'claims' and 'causes of action' pled and[/]or raised in" *A.B. I* (Compl. ¶ 19), but ALJ Howells concluded that a fair reading of the Due Process Complaint revealed that Plaintiffs sought to relitigate issues that had been decided in *A.B. I* (ALJ Order at 7-8 ¶¶ 2-3).  The Court finds that it is necessary to provide a summary of the facts and conclusions of law in *A.B. I*, followed by a recitation of the issues in the present action.

1.   *A.B. I* Facts

In *A.B. I*, the evidence viewed in the light most favorable to Plaintiffs revealed the following.  *A.B. I*, 2009 WL 902038, at *4-*6. A.B. is a fourteen-year-old boy with significant cognitive, language, visual and physical disabilities.  During the 2004-05 school year, A.B. was an elementary school student in CCSD's special education program.  During the spring of 2005, another child in A.B.'s class, S-1, groped and squeezed A.B.'s sexual parts and "humped" A.B. while making sexual noises; both children were fully clothed.  A.B.'s teacher told A.B.'s mother, L.B., about this incident by telephone

---

[3]The Court cites the administrative record as Admin. R. ##.

and letter, and the teacher also stated that there had been meetings regarding S-1 with the principal, social worker, psychologists and parents and that the school was using isolation precautions and monitoring procedures.  CCSD did not provide any other details about S-1's conduct to L.B.  The two children remained in the same class for the remainder of the year, though they were separated by a divider and had limited contact.

CCSD personnel informed Plaintiffs that S-1 and his family were moving and that he would not attend the same school as A.B. the following year.  However, in October of 2007, S-1's family returned to Clarke County, and S-1 enrolled in Clarke Middle School ("CMS"), which was by that time A.B.'s school.  S-1 was assigned to the same class as A.B.  On October 23, 2007, A.B.'s parents found out that S-1 was in A.B.'s class, and they asked for the two boys to be separated immediately and to have no further contact.  CCSD began serving A.B. and S-1 in separate classrooms at CMS on October 29, 2007, and the children do not have direct contact during the day.  L.B. and R.B. kept A.B. from school for part of each day in order to avoid S-1.

## 2.   *A.B. I* Conclusions of Law

In *A.B. I*, Plaintiffs made three main claims: (1) the May 2005 actions of S-1 and inactions of CCSD personnel created a hostile educational environment for A.B. and therefore denied A.B. a free appropriate public education ("FAPE") and violated A.B.'s rights under Section 504 and the ADA; (2) the October 2007 assignment of S-1

6

to A.B.'s class and the continued assignment of S-1 to CMS denies A.B. FAPE and violates A.B.'s rights under Section 504 and the ADA; and (3) the continued assignment of S-1 to CMS pending the outcome of the Due Process Request violates IDEA's "stay put" requirement. They also contended that CCSD violated IDEA and Section 504 by failing to provide Plaintiffs with A.B.'s records or information—specifically those records that included information regarding S-1. ALJ Miller found, and the Court affirmed, that Plaintiffs' claims related to the May 2005 incident were barred by the statute of limitations, *A.B. I*, 2009 WL 902038, at *10-*13, and that S-1's presence at CMS neither denied A.B. FAPE nor violated IDEA's stay-put requirement, *id.* at *13-*15. ALJ Miller and the Court also concluded that CCSD was not required under IDEA or the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g, to provide Plaintiffs with any records relating to S-1. *E.g., A.B. I*, 2009 WL 902038, at *8-*9.

## 3. Administrative Process

The administrative process in the present action was governed by the Georgia Department of Education regulations on special education hearing processes, Ga. Comp. R. & Regs. 160-4-7-.18 [hereinafter, the Court cites DOE special education regulations as DOE R. 160-4-7-.##], and the OSAH Administrative Rules of Procedure, Ga. Comp. R. & Regs. 616-1-2-.15 [hereinafter, the Court cites OSAH rules as OSAH R. ##]. After Plaintiffs filed their Due Process

Request and the ALJ took up various pre-hearing matters with the parties, CCSD moved for summary determination under OSAH Rule 15. Summary determination is similar to summary judgment; the movant must show, "based on supporting affidavits or other probative evidence . . . that there is no genuine issue of material fact for determination." OSAH R. 15(1). The party opposing the motion for summary determination "may not rest upon mere allegations or denials, but must show, by affidavit or other probative evidence, that there is a genuine issue of material fact for determination in the hearing." OSAH R. 15(3). The ALJ may decide that an evidentiary hearing is required and that summary determination is thus inappropriate, OSAH R. 15(6), but if the ALJ finds that the issue is proper for summary adjudication, then no hearing is required, OSAH R. 15(7).

Neither the OSAH Administrative Rules of Procedure nor the DOE special education hearing process regulation provides for discovery prior to summary determination, though parents are entitled to inspect education records concerning their child—and only their child. *See* OSAH R. 38; DOE R. 160-4-7-.8(2)(a), (e). While an ALJ has discretion under OSAH Rule 2(2) to "relax" the OSAH rules of procedure in an "appropriate" case "where such relaxation will facilitate the resolution of the matter without prejudice to the parties and will not be inconsistent with the requirements of the

8

[Administrative Procedure Act] or other applicable statute," ALJ Howells did not relax the rules in this case.

**4.    Plaintiffs' Claims In the Present Action and the ALJ's Findings of Fact and Conclusions of Law**

Plaintiffs contend that CCSD retaliated against them for exercising their right to make a Due Process Complaint and discriminated against them because of A.B.'s disability, in violation of Section 504 (Compl. ¶¶ 90-99), the ADA (*id.* ¶¶ 100-101), the First Amendment (*id.* ¶¶ 102-106), the Due Process Clause (*id.* ¶¶ 107-109), and the IDEA (*id.* ¶¶ 110-115).  Plaintiffs challenge each of ALJ Howells's legal conclusions and contend that ALJ Howells made improper findings of fact by weighing the evidence and not simply finding undisputed facts.  Plaintiffs also argue that ALJ Howells erred because she did not address all of their claims in her final decision.  Based on the Court's review of Plaintiffs' Due Process Complaint and Complaint in this action, Plaintiffs contend that CCSD discriminated and retaliated against them in the following ways:

1.    CCSD Failed to Provide A.B.'s Records to Plaintiffs

a.    *Records Concerning and Relating to A.B.*

Plaintiffs contend that CCSD failed to provide Plaintiffs with all records concerning and relating to A.B., including records about the May 2005 incident.  (Admin. Compl. ¶¶ 36-39, 65; Compl. ¶¶ 47, 61-62, 83-84.)  ALJ Howells found that the records Plaintiffs sought concerning A.B. "were actually records for S-1."  (ALJ Order at 4 ¶¶ 3-4.)  ALJ Howells also found that CCSD refused to provide Plaintiffs

with S-1's records because it "believes that it is prohibited from doing so under the law." (ALJ Order at 5 ¶ 4 (citing Admin. R. 13, Exs. to Eddy Aff., May 9, 2008; Ex. 7 to Admin. R. 3, Letter from Harold Eddy to Jonathan Zimring, Nov. 29, 2007 [hereinafter Nov. 29 Letter]).)  ALJ Howells determined that this claim was barred by Georgia's abatement doctrine because resolution of this claim "would necessarily require [her] to resolve some of the same issues in [*A.B. I*], such as whether the presence of S-1 in Clarke Middle School amounted to a change in A.B.'s placement or a denial of a free and appropriate public education." (ALJ Order at 7-8 ¶¶ 2-3 (citing O.C.G.A. § 9-2-5(a); O.C.G.A. § 9-2-44(a).)

> b.  *Records and Data Relating to A.B.*

Plaintiffs contend that CCSD failed to provide "educational records, data, records relating to A.B. and progress reports." (Admin. Compl. ¶ 56; Compl. ¶ 80.)  ALJ Howells noted that Plaintiffs did not cite specific education records for A.B. that CCSD failed to produce and also found that this claim related to certain data which A.B.'s teachers normally provided to L.B.  ALJ Howells appears to have concluded that this claim is the same as Plaintiffs' claim arising out of CCSD's refusal to provide Plaintiffs with S-1's records (ALJ Order at 4 ¶¶ 2-3 & n.2) and was thus barred by Georgia's doctrine of abatement.

10

c.   *IEP Team Member Meeting Notes*

Plaintiffs allege that CCSD refused to provide Plaintiffs with its individualized education program ("IEP") team members' notes regarding a resolution session. (Admin. Compl. ¶ 55; Compl. ¶ 79.) ALJ Howells did not address this issue in her final decision.

2.   <u>CCSD Refused to Communicate with L.B. and R.B.</u>

a.   *Communication Regarding S-1*

According to Plaintiffs, on October 29, 2007, before Plaintiffs filed their Due Process Complaint, CCSD represented that it would have further contact with L.B. and R.B. regarding possible alternative placements for S-1 and protection for A.B.   After Plaintiffs filed their Due Process Complaint on November 8, 2007, such contact did not occur.  (Admin. Compl. ¶ 34; Compl. ¶¶ 57-59.) In addition, Plaintiffs claim that CCSD placed S-1 in A.B.'s class while withholding from Plaintiffs "the necessary information required for them to make informed consent about the safety of their son and the appropriateness of the classroom for him." (Admin. Compl. ¶ 69; Compl. ¶¶ 68, 85.)   Plaintiffs also allege that CCSD failed to provide L.B. and R.B. with timely notice of meetings or interactions between A.B. and S-1.  (Admin. Compl. ¶ 58.)  ALJ Howells concluded that these claims, along with other claims related to S-1's placement at CMS, were barred by Georgia's abatement doctrine.  (ALJ Order at 7-8 ¶ 3.)

11

b.   *Communication Regarding A.B.'s Education Program*

Plaintiffs claim that after November 8, 2007, CCSD ordered its teachers "not to discuss aspects of A.B.'s safety at school and other aspects of his educational program with A.B.'s parents." (Admin. Compl. ¶¶ 35, 47; Compl. ¶¶ 60, 69.)  In addition, during a resolution session, CCSD instructed CCSD employees not to answer Plaintiffs' questions about A.B.'s safety. (Admin. Compl. ¶¶ 43-46; Compl. ¶¶ 63-67.)  ALJ Howells found that these allegations related to a resolution session between the parties in which CCSD instructed one of its employees not to answer Plaintiffs' questions regarding the definition of "sexual abuse" and when CCSD is required to report it. (ALJ Order at 5 ¶ 6 & n. 3 (citing Ex. 2 to Admin. R. 30, L.B. Aff. ¶ 10, June 4, 2008 [hereinafter L.B. Aff.]).)  ALJ Howells concluded that CCSD's instruction for its employees not to answer certain questions during the resolution session did not amount to a retaliatory adverse action because CCSD believed that it was not required by law to respond to such questions. (ALJ Order at 10 ¶ 7.) In the alternative, ALJ Howells concluded that even if there was an adverse action, Plaintiffs could not show a causal connection between the alleged adverse action and the Due Process Complaint, and Plaintiffs could not rebut CCSD's legitimate, nonretaliatory reasons for instructing its employees not to answer certain questions during the resolution session. (ALJ Order at 10-11 ¶¶ 8-9.)  ALJ Howells did not make findings of fact or conclusions of law on Plaintiffs'

similar claims arising out of CCSD's alleged conduct *outside the resolution session*, specifically Plaintiffs' claims that CCSD failed to address Plaintiffs' safety concerns and that CCSD did not communicate with L.B. and R.B. regarding A.B.'s safety and education.

### 3.   CCSD Refused to Place S-1 in Another School

According to Plaintiffs, S-1's presence at CMS creates a hostile educational environment.  (Admin. Compl. ¶ 66.)  Plaintiffs claim that after Plaintiffs asked that S-1 be moved to another school, CCSD did not move S-1 to another school.  (Admin. Compl. ¶ 32; Compl. ¶¶ 57, 59, 78.)  Plaintiffs allege that CCSD refused to relocate classrooms at CMS to separate A.B. from S-1.  (Admin. Compl. ¶ 60.) Plaintiffs also contend that CCSD lengthened S-1's school day, so S-1 attended school during the mornings and afternoons instead of just afternoons; Plaintiffs argue that this action reduced the time "A.B. could and would attend school."  (Admin. Compl. ¶ 57; Compl. ¶ 81.) ALJ Howells found that CCSD refused to move S-1 to another school "because it felt it was prohibited from doing so under the law." (ALJ Order at 6 ¶ 8 (citing Admin. R. 13, Ex. 3 to Eddy Aff., Resolution Session Hearing Tr. at 44, 64-65, Nov. 28, 2007 [hereinafter Resolution Session Tr.])  ALJ Howells concluded that these claims were barred by Georgia's abatement doctrine.  (ALJ Order at 7-8 ¶ 3.)

4.   <u>CCSD Refused to Meet With S-1's Parents</u>

Plaintiffs believe that CCSD has refused to meet with S-1's parents or identify Plaintiffs' concerns to them.  (Admin. Compl. ¶ 48; Compl. ¶ 70.)  Plaintiffs also believe that CCSD has refused to ask S-1's parents for their approval to disclose S-1's educational records to Plaintiffs.  (Compl. ¶ 71.)  ALJ Howells found that CCSD "has taken the position that it will not discuss whether it has or has not approached the family of S-1 about moving him to another school."  (ALJ Order at 5 ¶ 5 (citing Resolution Session Tr.).)  ALJ Howells concluded that CCSD's refusal to discuss its communications with S-1's parents did not amount to a retaliatory adverse action because CCSD believed that it was not permitted by law to reveal such communications.  (ALJ Order at 10 ¶ 7.)  In the alternative, ALJ Howells concluded that even if there was an adverse action, Plaintiffs could not show a causal connection between the alleged adverse action and the Due Process Complaint, and Plaintiffs could not rebut CCSD's legitimate, nonretaliatory reasons for refusing to discuss with Plaintiffs CCSD's communications with S-1's parents. (ALJ Order at 10-11 ¶¶ 8-9.)

5.   <u>CCSD Harassed and Emotionally Abused A.B.'s Parents</u>

Plaintiffs contend that CCSD's attorney yelled at Plaintiffs and was "aggressive in tone and demeanor."  (Admin. Compl. ¶¶ 43-46; Compl. ¶¶ 63-67.)  ALJ Howells found that this claim stems from a resolution session between the parties in which both CCSD's counsel and Plaintiffs' counsel raised their voices at each other. (ALJ Order

at 5 ¶ 6.)   ALJ Howells concluded that the raised voice and aggressive demeanor during the resolution session did not constitute an adverse action because the actions "occurred in the context of ongoing contentious litigation" in which both sides were represented by counsel and because although CCSD's counsel did raise his voice, Plaintiffs' counsel "resorted to the same behavior, thereby perpetuating the problem." (ALJ Order at 10 ¶ 7 & n.5.)

     6.   CCSD Threatened and Slandered A.B.'s Parents

     Plaintiffs assert that CCSD's counsel threatened or slandered A.B.'s mother.  (Admin. Compl. ¶¶ 50-51, 59; Compl. ¶¶ 72-73, 82.) ALJ Howells found that this allegation related to statements made by CCSD's counsel during a pre-hearing conference before ALJ Miller in which CCSD's counsel told ALJ Miller that he had concerns about the confidentiality of S-1's records if they were disclosed to Plaintiffs because CCSD believed that L.B. had improperly disclosed information about another child which she obtained in her capacity as a sexual abuse lay investigator. (ALJ Order at 6 ¶ 7 (citing Ex. 5 to Admin. R. 30, Pre-Hearing Conference Tr. at 42-43, Dec. 11, 2007 [hereinafter Pre-Hearing Conf. Tr.]).)   ALJ Howells found that the pre-hearing conference argument by CCSD's attorney regarding concerns about the confidentiality of S-1's records was not an adverse action because it "occurred in the context of ongoing contentious litigation, while both sides were represented by counsel." (ALJ Order at 10 ¶ 7.)

### 7.   CCSD Did Not Implement A.B.'s IEP

According to Plaintiffs, CCSD "failed to implement [A.B.'s] IEP and IEP meeting understandings." (Admin. Compl. ¶ 68; Compl. ¶ 86.) ALJ Howells did not make specific findings of fact or conclusions of law on this claim.

### 8.   CCSD Created a Hostile Educational Environment

Plaintiffs contend that CCSD made Plaintiffs unwelcome at school, treating them differently from other parents and children. (Admin. Compl. ¶¶ 63-64; Compl. ¶ 77.)  ALJ Howells did not make specific findings of fact or conclusions of law on this claim.

### 9.   CCSD Violated IDEA by Seeking Summary Determination

Plaintiffs also contend that by seeking summary determination, CCSD deprived Plaintiffs of their right to a hearing under IDEA. (Compl. ¶¶ 116-121).  It is not clear whether this issue was raised below, but the Court rejects this argument.  It was ALJ Howells, not CCSD, who granted CCSD's motion for summary determination without an evidentiary hearing.  Under OSAH rules, the administrative hearing process includes an opportunity for the parties to make motions for summary determination, which, if granted, would obviate the need for an evidentiary hearing because an ALJ need not conduct an evidentiary hearing if there is no genuine issue of material fact.  *See* OSAH R. 15(7).

16

10.  Harassment and Hostile Environment Claims

Finally, Plaintiffs asserted discrimination claims under Section 504 and the ADA.  ALJ Howells concluded that to make out a discrimination claim in the education context under Section 504 and the ADA, "'something more than an IDEA violation for failure to provide a free appropriate public education in the least restrictive environment must be shown.'"  (ALJ Order at 8 ¶ 5 (quoting *K.C. v. Fulton County Sch. Dist.*, Civil Action File No. 1:03-CV-3501-TWT, 2006 WL 1868348, at *17 (N.D. Ga. June 30, 2006).)  ALJ Howells concluded that Plaintiffs had not met this requirement. (ALJ Order at 9 ¶ 5.)

DISCUSSION

Plaintiffs bring two types of claims: retaliation and disability discrimination.  Regarding the discrimination claims, ALJ Howells concluded that Plaintiffs did not "assert any facts that would support a finding that [CCSD's] actions, after the filing of the Complaint in [*A.B. I*], caused A.B. to be excluded from participation in or denied benefits of his education, or subjected to discrimination solely on the basis of his disability." (ALJ Order at 8-9 ¶ 5.)  Furthermore, Plaintiffs have failed to point this Court to any evidence in the present record from which a reasonable factfinder could conclude that A.B. has been subjected to disability discrimination.  Therefore, to the extent that Plaintiffs' disability discrimination claims in the present action (which are generally

17

characterized as "harassment" and "hostile education environment" claims) were not already addressed in *A.B. I*, the Court finds that ALJ Howells correctly granted CCSD's motion for summary determination on these claims.

The remainder of Plaintiffs' claims are retaliation claims: Plaintiffs claim that CCSD retaliated against them in a variety of ways after they filed their Due Process Complaint in November of 2007. ALJ Howells found that the doctrine of abatement applied to prevent Plaintiffs from bringing several of their retaliation claims, and she found that Plaintiffs did not show that any genuine issues of material fact existed as to the remaining retaliation claims. Each category of retaliation claims is addressed in turn below.

## I.   Claims Dismissed Based on Findings in *A.B. I*

ALJ Howells relied on the doctrine of abatement to grant summary determination as to several of Plaintiffs' claims. (ALJ Order at 7-8 ¶ 3.) When ALJ Howells issued her final decision, Plaintiffs had appealed ALJ Miller's decision in *A.B. I* to this Court, but the Court had not yet issued any decision regarding the merits of Plaintiffs' claims in that case. ALJ Howells determined that many of Plaintiffs' claims in this case overlapped with Plaintiffs' claims in *A.B. I*, and ALJ Howells found that she was constrained by the final decision of ALJ Miller in *A.B. I*.

After ALJ Howells issued her final decision, this Court reviewed and affirmed ALJ Miller's decision in *A.B. I*. Therefore, this Court

18

need not decide whether ALJ Howells properly applied Georgia law on abatement based upon ALJ Miller's decision in *A.B. I.*  The question for the Court now is whether any of the claims Plaintiffs assert in the present action should be dismissed based on the Court's ruling in *A.B. I.*[4] Under IDEA, a parent may file a "separate due process complaint on an issue separate from a due process complaint already filed." 20 U.S.C. § 1415(o).  However, any claims in the separate due process complaint on matters *at issue in* a due process complaint already filed are barred by principles of claim preclusion. *See Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 281-85 (7th Cir. 2007) (applying claim preclusion to IDEA claims that arose out of the same transaction or occurrence as claims that had previously been litigated); *cf. JSK*, 941 F.2d at 1567 (noting that state appellate court decision regarding IDEA claim was entitled to preclusive effect).

    A.    Failure to Provide A.B.'s Records to Plaintiffs

    Plaintiffs claim that CCSD failed to provide A.B.'s records to Plaintiffs as required by law.  First, Plaintiffs allege that CCSD improperly withheld records concerning the May 2005 incident. (Admin. Compl. ¶¶ 39, 65; Compl. ¶¶ 83-84.)  Plaintiffs made this claim in *A.B. I*, contending that CCSD's refusal to produce the

---

    [4]The Court also notes that on appeal to the district court an ALJ's decision is not entitled to any preclusive effect.  *JSK ex rel. JK v. Hendry County Sch. Bd.*, 941 F.2d 1563, 1567 (11th Cir. 1991).  As stated, the issue is whether *this Court's* order in *A.B. I* precludes certain claims asserted by Plaintiff in the present action.

records was discriminatory and amounted to a denial of FAPE. Plaintiffs now claim that CCSD's actions—including CCSD's failure to disclose whether it had met with S-1's parents or asked them to approve disclosure of S-1's records to Plaintiffs—were retaliatory. The Court found in *A.B. I* that CCSD was not permitted to produce the requested confidential information about S-1 without a lawfully issued subpoena. *A.B. I*, 2009 WL 902038, at *8-*9, *12-*13. Thus, CCSD's action in refusing to produce the May 2005 incident records (or other records relating to S-1) cannot constitute an "adverse action" for purposes of a discrimination or retaliation claim.[5] Furthermore, as the Court observed in *A.B. I*, though IDEA and FERPA permit disclosure of a student's confidential information with consent, nothing requires a school to request that a parent grant permission for the school to disclose her child's education records to another child's parents. *A.B. I*, 2009 WL 902038, at *12. Thus, any claims based upon CCSD's failure to provide the May 2005 incident records or other confidential information about S-1 are properly dismissed.

Next, Plaintiffs contend that CCSD failed to provide "educational records, data, records relating to A.B. and progress reports." (Admin. Compl. ¶ 56; Compl. ¶ 80.) Plaintiffs do not cite

---

[5]Also, it is implausible for Plaintiffs to suggest that there is a causal connection between Plaintiffs' Due Process Complaint and CCSD's failure to provide records regarding the May 2005 incident because Plaintiffs alleged that they requested information regarding the May 2005 incident *in 2005*—two years before the Due Process Complaint—"and such information was denied or withheld." (Admin. Compl. ¶ 22.)

specific education records that Defendant failed to give Plaintiffs. L.B. stated in her affidavit that A.B.'s teacher failed to provide certain data that she had provided to L.B. in the past.  (L.B. Aff. ¶ 18; Ex. 7 to Admin. R. 30, email from E. Stevenson to L.B., Jan. 25, 2008.)  Plaintiffs made the same claim in *A.B. I*, contending that CCSD's failure to provide the records was discriminatory and resulted in a denial of FAPE.  Plaintiffs now contend that CCSD's actions were retaliatory.  Plaintiffs have not pointed the Court to any additional educational records that were not provided to Plaintiffs which the Court did not already address in *A.B. I*.  The Court in *A.B. I* found that the undisputed evidence showed that CCSD did not fail to provide Plaintiffs with any records CCSD was required to produce.  *A.B. I*, 2009 WL 902038, at *4 n.7.  Therefore, the Court concludes that Plaintiffs have not met their burden of showing any "adverse action" with regard to CCSD's alleged failure to produce A.B.'s educational records, so this claim is properly dismissed.

Finally, Plaintiffs contend that CCSD refused to provide Plaintiffs with its IEP team members' notes regarding a resolution session.  (Admin. Compl. ¶ 55; Compl. ¶ 79.)  This issue was not addressed in *A.B. I*.  In her final decision, ALJ Howells did not make any findings of undisputed fact regarding the IEP team members' notes or make any conclusions of law on this precise issue, and the Court cannot tell whether or how ALJ Howells reached a conclusion on this

claim.[6]   The Court therefore remands this issue to the ALJ for clarification.

> B.   Claims Related to the Placement of S-1

Plaintiffs make several claims related to S-1's placement at CMS.  The Court determined in *A.B. I* that S-1's placement at CMS did not deprive A.B. of FAPE.  *A.B. I*, 2009 WL 902038, at *13-*14.  The Court also concluded that S-1's placement would not support Plaintiffs' claims for intentional discrimination.  *Id.* at *15-*16.  Likewise, the placement of S-1 at CMS is not an "adverse action" that will support a retaliation claim because CCSD was permitted, if not required, by law to maintain S-1's placement at CMS.   Thus, the following claims are properly dismissed: (1) claims based on CCSD's failure to disclose information to Plaintiffs about S-1's placement[7] (Admin. Compl. ¶ 69; Compl. ¶¶ 68, 85); (2) claims based on CCSD's failure to provide L.B. and R.B. with timely notice of meetings or interactions between A.B. and S-1[8]  (Admin. Compl. ¶ 58); (3) claims

---

[6]The Court doubts that the meeting notes taken by IEP team members at the resolution session are "education records" within the meaning of IDEA and FERPA but cannot review this issue based on the record presently before it, which does not address this claim.

[7]The Court notes that S-1 was placed at CMS *prior to* Plaintiffs' Due Process Complaint, so it is implausible to suggest that CCSD's failure to provide this information was *because of* the Due Process Complaint.

[8]The Court addressed this issue briefly in *A.B. I*.  This claim relates to one occasion when S-1 arrived at the school cafeteria for an IEP meeting with his parents and A.B. was in the cafeteria.  There was no indication that the children saw each other, and school employees promptly removed S-1 from the room.  *A.B. I*, 2009 WL 902038, at *14 n.25. Plaintiffs found out about the incident because CCSD sent them a letter informing them of it.

based on CCSD's failure to move S-1 to another school or to move S-1's classroom (Admin. Compl. ¶¶ 32, 60, 66; Compl. ¶¶ 57, 59, 78); (4) claims related to S-1's schedule (Admin. Compl. ¶ 57; Compl. ¶ 81); and (5) claims that CCSD did not follow through on a promise to contact Plaintiffs regarding alternative placements for S-1 (Admin. Compl. ¶ 34; Compl. ¶¶ 57-59).

## II.  Remaining Claims

Plaintiffs' remaining claims were not at issue in *A.B. I.*  ALJ Howells granted summary determination as to the remaining retaliation claims because she found that Plaintiffs had not pointed to sufficient evidence to create a genuine issue of material fact on those claims.  To prevail on their retaliation claims, Plaintiffs must show that CCSD took an adverse action against them because they engaged in protected activity.  To do this, Plaintiffs may point to facts establishing a prima facie case of retaliation: (1) Plaintiffs engaged in statutorily protected expression; (2) Plaintiffs suffered an adverse action; and (3) the adverse action was causally related to the protected expression.  *E.g., Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1180 (11th Cir. 2003) (setting forth elements of retaliation prima facie case in ADA context).  If Plaintiffs meet this burden, then the burden shifts to CCSD to articulate a legitimate, nonretaliatory reason for its actions.  *Id.* at 1183 n.34. After that, Plaintiffs will have to demonstrate that CCSD's proffered reasons "are mere pretext to conceal the retaliation."  *Id.*

CCSD does not appear to dispute that the Due Process Complaint is protected activity.  CCSD does contend, however, that Plaintiffs did not show that a genuine issue of material fact exists as to whether CCSD subjected Plaintiffs to any "adverse action" or whether any "adverse action" was causally related to the protected activity. An "adverse action" is one that is likely to deter a reasonable person from complaining about unlawful discrimination or about IDEA violations.  *E.g., Shotz*, 344 F.3d at 1182-83.

> It is important not to make a federal case out of [conduct] that is *de minimis*, causing no objective harm and reflecting a mere chip-on-the-shoulder complaint. However, it is equally important that the threshold for what constitutes an adverse . . . action not be elevated artificially, because . . ., to the extent that it is deemed not to rise to the level of an adverse . . . action, [it] is removed completely from any scrutiny for discrimination.

> Thus, while conduct must be material to be adverse in this context, it need not be traumatic. If we set the bar too high, we run the risk of chilling legitimate opposition to unlawful and discriminatory practices, and could stifle [a person's] willingness to file charges of discrimination.

*Id.* (alterations in original; internal quotation marks and citations omitted); *see also M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1158-59 (11th Cir. 2006) (recognizing, under IDEA, retaliation claims related to the evaluation or educational placement of a child and suggesting that restricting a parent from visiting a school, harassing parents in IEP meetings, and writing intimidating letters to parents may be actionable adverse actions).

To prove a causal connection between the protected activity and the adverse action, Plaintiffs must show "that the protected activity and the adverse action were not *wholly unrelated*." *Shotz*, 344 F.3d at 1180 n.30 (internal quotation marks omitted).  This element is met if Plaintiffs "provide[] sufficient evidence that the decision-maker became aware of the protected conduct, and that there was a close temporal proximity between this awareness and the adverse . . . action." *Id.* (second alteration in original) (internal quotation marks omitted).

Plaintiffs' remaining retaliation claims can be divided into two categories: CCSD's litigation conduct and CCSD's conduct related to A.B.'s education.  With regard to the first category, the Court agrees with ALJ Howells that the conduct of CCSD's counsel during this litigation does not amount to an "adverse action."  Counsel should be permitted to make strategic decisions regarding which questions his clients should answer during a resolution meeting or how to oppose a request for documents he believes his client may not produce.  In addition, while the Court expects professional behavior by attorneys, the alleged conduct here, consisting of a "raised voice" and "aggressive demeanor" at a meeting where Plaintiffs' counsel accompanied them, does not rise to the level of an adverse action for purposes of Plaintiffs' retaliation claim.  For these reasons, the Court concludes that ALJ Howells properly granted summary determination as to Plaintiffs' claims arising out of the

behavior of CCSD's counsel during this litigation.  (Admin Compl. ¶¶ 43-46, 50-51, 53-54, 59; Compl. ¶¶ 63-67, 72-73, 75-76, 82.)

The remaining retaliation claims that were not addressed in *A.B. I* are that (1) CCSD refused to address Plaintiffs' safety concerns after Plaintiffs filed their Due Process Complaint (Admin. Compl. ¶¶ 35, 47; Compl. ¶¶ 60, 69); (2) CCSD did not implement A.B.'s IEP (Admin. Compl. ¶ 68; Compl. ¶ 86); and (3) CCSD made Plaintiffs unwelcome at school after they filed their Due Process Complaint, treating them differently from other parents and children (Admin. Compl. ¶¶ 63-64; Compl. ¶ 77; *see also* L.B. Aff. ¶ 10).  Failing to implement an IEP,[9] refusing to discuss a child's placement with a parent[10] and making a child and his parents feel unwelcome at school could be "adverse actions" for purposes of Plaintiffs' retaliation claims.  *See M.T.V.*, 446 F.3d at 1158-59 (suggesting that restricting parent's movement in school, monitoring parent at school, denying parent's visitor pass request could be adverse actions for purposes of an IDEA retaliation claim).  ALJ Howells did not make specific

---

[9]If this claim is simply that CCSD did not implement A.B.'s IEP because CCSD "changed" A.B.'s placement by permitting S-1 to attend CMS, that issue was resolved in *A.B. I* and may not be relitigated here.

[10]In *A.B. I*, Plaintiffs made "safety concerns" claims, but ALJ Miller and the Court concluded that these claims related exclusively to the placement of S-1 at CMS and CCSD's refusal to divulge confidential details about S-1 to Plaintiffs.  It may be that the undisputed facts here show that Plaintiffs are simply rehashing that claim here.  If Plaintiffs' "safety concerns" are simply that S-1 is in the same building as A.B. and has, on one occasion since October 29, 2007 been in the same room with A.B. for a fleeting moment while under adult supervision, then that is not an adverse action sufficient to state a retaliation claim.

findings of undisputed fact or conclusions of law on these issues, and the Court cannot tell whether or how ALJ Howells reached a conclusion on these claims. Therefore, the Court remands these three issues to the ALJ for clarification.

CONCLUSION

For the reasons set forth above, the Court **grants** CCSD's Motion to Dismiss (Doc. 10) as to all of Plaintiffs' claims except claims related to (1) Defendant's failure to provide resolution meeting notes to Plaintiffs, (2) Defendant's failure to address Plaintiffs' safety concerns, (3) Defendant's failure to implement Plaintiff A.B.'s individualized education program, and (4) Defendant's unwelcoming treatment of Plaintiffs at school. The Court **remands** those claims to the ALJ for clarification and for the ALJ to make specific findings and conclusions regarding those claims. After the ALJ has made such findings and conclusions, the aggrieved party shall have an  opportunity to appeal the ALJ's decision on those claims to this Court.  The Court **denies** Plaintiffs' Motion for Admission of Additional Evidence (Doc. 16) and  Plaintiffs' Motion for a Hearing (Doc. 15).  Plaintiffs' Motion to Consolidate (Doc. 14) is **moot**.

IT IS SO ORDERED, this 8th day of June, 2009.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE